**CERAMICA REGIOMONTANA, S.A., Ceramicas Y Pisos Industriales de Culiacan, S.A. de C.V., and Industrias Intercontinental, S.A., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Court No. 89–06–00323.
Slip Op. 94–74.

United States Court of International Trade.

May 5, 1994.

---

Ross & Hardies (Steven P. Kersner), Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice (Velta A. Melnbrencis), of counsel: Thomas H. Fine, Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

## OPINION

MUSGRAVE, Judge.

Plaintiffs Ceramica Regiomontana ("Ceramica") Ceramicas Y Pisos Industriales de Caliacan, S.A. de C.V. ("Caliacan") and Industrias Intercontinental ("Intercontinental") challenge the final results of an administrative review of countervailing findings announced by the International Trade Administration, U.S. Department of Commerce ("ITA" the "Department" or "Commerce"): *Ceramic Tile From Mexico; Final Results of Countervailing Duty Administrative Review,* 54 Fed.Reg. 19,930 (May 9, 1989). The review covers shipments imported during the period January 1, 1986 to December 31, 1986.

*Background*

On May 10, 1982, Commerce published an countervailing duty order on ceramic tile from Mexico. *Final Affirmative Countervailing Duty Determination; Ceramic Tile From Mexico and Countervailing Duty Order,* 47 Fed.Reg. 20,012 (May 10, 1982). The countervailing duty order was issued under the authority of 19 U.S.C. § 1303(a)(1), absent a material injury determination by Com-

merce, as Mexico was not at that time a "country under the Agreement" within the meaning of 19 U.S.C. § 1671(b).

On April 23, 1985, Mexico and the United States signed the Understanding between the United States and Mexico Regarding Subsidies and Countervailing Duties ("Understanding"). Paragraph 14 of the Understanding required the designation of Mexico as a "country under the Agreement." Accordingly, on April 30, 1985, the Office of the United States Trade Representative published a notice stating that, in accordance with 19 U.S.C. § 1671(b), as of April 23, 1985, Mexico was a "country under the Agreement." *Determination Regarding the Application of Certain International Agreements,* 50 Fed.Reg. 18,335, 18,335–36 (1985).

On June 29, 1988, Commerce initiated an administrative review of the countervailing duty order on ceramic tile from Mexico, covering the period January 1 through December 31, 1986. *Initiation of Antidumping and Countervailing Duty Reviews,* 53 Fed. Reg. 24,470 (June 29, 1988).

On December 9, 1988, Commerce published a notice of its preliminary results of the administrative review. *Ceramic Tile From Mexico; Preliminary Results of Countervailing Duty Administrative Review,* 53 Fed.Reg. 49,718 (Dec. 9, 1988). For the 1986 calendar year, Commerce found thirty-six zero rate or *de minimis* firms and a 4.28 percent *ad valorem* for all other firms.

Plaintiffs' original complaint was amended by motion to two counts. *Ceramica Regiomontana, S.A. et al. v. United States,* — CIT —, Slip Op. No. 90–109, 1990 WL 160258 (October 17, 1990). Count One alleges that Commerce cannot impose countervailing duties on merchandise imported from Mexico after April 23, 1985, the date that Mexico became a "country under the Agreement" within the meaning of 19 U.S.C. § 1671, without a determination by Commerce that the imports of such merchandise materially injure or threaten to materially injure a United States industry producing a like product. Because no injury determination covering plaintiffs' ceramic tile imports has been made, plaintiffs argue the antidumping duties

imposed after April 23, 1985 are unauthorized.

Count Two alleges that Commerce improperly excluded companies receiving zero or *de minimis* benefits from its calculation of the country-wide countervailing duty rate under *Ipsco, Inc. v. United States*, 899 F.2d 1192 (Fed.Cir.1990). The appellate court in *Ipsco* held that in calculating the country-wide subsidy rate, Commerce should include companies with zero and *de minimis* subsidy rates.

### Standard of Review

In reviewing injury, antidumping, and countervailing duty investigations and determinations, this Court must hold unlawful any determination unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (*quoting Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Moreover, the Court may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it *de novo*. *See American Spring Wire Corp. v. United States*, 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984) (*citing Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465–66), *aff'd. sub nom., Armco, Inc. v. United States*, 760 F.2d 249 (Fed.Cir.1985).

Substantial evidence supporting an agency determination must be based on the whole record. *See Universal Camera Corp.*, 340 U.S. 474, 488, 71 S.Ct. 456, 465–66, 95 L.Ed. 456 (1951). The "whole record" means that the Court must consider both sides of the record. It is not sufficient to examine merely the evidence that sustains the agency's conclusion. *Id.* In other words, it is not enough that the evidence supporting the agency decision is "substantial" when considered by itself. The substantiality of evidence must take into account whatever in the rec-ord fairly detracts from its weight. *Universal Camera Corp.*, 340 U.S. at 478, 488, 71 S.Ct. at 459–60, 465–66.

### Discussion

1. *Commerce's Decision to Impose Countervailing Duties on Ceramic Tile Imported From Mexico on or After April 23, 1985*

A. Legislative history of the countervailing duty laws

At the time of the establishment of the GATT in 1947, the United States countervailing duty law, under § 303 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1303, only applied to dutiable items and did not provide for an injury determination. Therefore, under the "grandfather clause" of the GATT, the United States was under no obligation to apply paragraph 6(a) of the GATT, which was inconsistent with U.S. trade law. Paragraph 6(a) of the GATT stated:

> 6. (a) No contracting party shall levy any antidumping or countervailing duty on the importation of any product of the territory of another contracting party unless it determines that the effect of the dumping or subsidization, as the case may be, is such as to cause or threaten material injury to an established domestic industry, or is such as to retard materially the establishment of a domestic industry.

GATT, 61 Stat. All, T.I.A.S. No. 1700, 55 U.N.T.S. 184 (1947).

In 1974, Congress passed the Trade Act of 1974, which, *inter alia*, amended 19 U.S.C. § 1303, expanding the countervailing duty law to cover non-dutiable as well as dutiable items. Section 1303 originally contained the old law that allowed countervailing duties to be assessed on dutiable items. The 1974 amendment added, *inter alia*, subsection (a)(2) which provided as follows:

> (2) In the case of any imported article or merchandise which is free of duty, duties may be imposed under this section only if there is an affirmative determination by the Commission under subsection (b)(1) of this section; except that such a determination shall not be required unless a determination of injury is required by

the international obligations of the United States.

19 U.S.C. § 1303(a)(2) (1976).

Therefore, following the enactment of the Trade Act of 1974, injury determination by Commerce were required as condition precedent to imposing countervailing duties on subsidized nondutiable goods only if required by international obligations (*i.e.,* the GATT). An injury determination was still not required for dutiable goods.

In 1979, Congress enacted the Trade Agreements Act of 1979, Pub.L. 96–39, 93 Stat. 144, which added a new title to the Tariff Act of 1930, Title VII: Countervailing and Antidumping Duties, 19 U.S.C. §§ 1671 through 1677g. The Trade Agreements Act was the implementing legislation for the Subsidies/Countervailing Measures Agreement ("Subsidies Code"), signed by the GATT members, stemming from the Tokyo Round of trade negotiations of the GATT. Section 101 of the Trade Agreements Act added § 701 to the Tariff Act of 1930, 19 U.S.C. § 1671, which replaced the countervailing duty law under 19 U.S.C. § 1303, as applied to exports from a "country under the Agreement." The term "under the Agreement" refers to the obligations found in the Subsidies Code of the GATT. Section 1671 provides as follows:

## § 1671. Countervailing duties imposed

(a) **General rule.**—If—

(1) the administrating authority determines that—

(A) a country under the Agreement, or

(B) a person who is a citizen or national of such a country, or a corporation, association, or other organization organized in such a country,

is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of a class or kind of merchandise imported into the United States, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

by reason of imports of that merchandise, then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, equal to the amount of the net subsidy.

(b) **Country under the Agreement.**—For purposes of this part, the term "country under the Agreement" means a country—

(1) between the United States and which the Agreement on Subsidies and Countervailing Measures applies, as determined under section 2503(b) of this title,

(2) which has assumed obligations with respect to the United States which are substantially equivalent to obligations under the Agreement, as determined by the President, or

(3) with respect to which the President determines that—

(A) there is an agreement in effect between the United States and that country which—

(i) was in force on June 19, 1979, and

(ii) requires unconditional most-favored-nation treatment with respect to articles imported into the United States,

(B) the General Agreement on Tariffs and Trade does not apply between the United States and that country, and

(C) the agreement described in subparagraph (A) does not expressly permit—

(i) actions required or permitted by the General Agreement on Tariffs and Trade, or required by the Congress, or

(ii) nondiscriminatory prohibitions or restrictions on importation which are designed to prevent deceptive or unfair practices.

(c) **Cross reference.**—

**For provisions of law applicable in the case of merchandise which is the product of a country other than a country under the Agreement, see section 1303 of this title.**

Section 1303 was amended by the Trade Agreements Act of 1979 by changing the language in (a)(2) and adding new language

in (b). These changes provide in relevant part:

(2) In the case of any imported article or merchandise which is free of duty, duties may be imposed under this section only if there are affirmative determinations by the Commission under subtitle IV of this chapter; except that such a determination shall not be required unless a determination of injury is required by the international obligations of the United States.

**(b) Regulations prescribed by administering authority; imported articles or merchandise which are not duty free**

The duty imposed under subsection (a) of this section shall be imposed, under regulations prescribed by the administering authority (as defined in section 1677(1) of this title), in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671d(b) of this title shall be required,

(2) an investigation may not be suspended under section 1671c(c) of this title,

(3) no determination as to the presence of critical circumstances shall be made under section 1671b(e) or 1671d(a)(2) or (b)(4)(A) of this title, and

(4) any reference to determinations by the Commission, or to the suspension of an investigation under 1671c(c) of this title which are not permitted or required by this subsection shall be disregarded.

19 U.S.C. § 1303(a)(2) and (b) (1982).

Furthermore, in order to encourage other countries to assume the obligations of the Subsidies Code or substantially equivalent obligations with respect to the United States, Congress enacted a *transitional rule* which provided for injury determinations for pre-existing countervailing duty orders in limited circumstances. This *transitional rule,* contained in section 104 of the 1979 Act, 93 Stat. 190–193, authorizes Commerce to make a

injury determination in the case of a countervailing duty order issued under 19 U.S.C. § 1303, prior to January 1, 1980, if the exporting country became a "country under the Agreement" as of the date and its government or, in limited circumstances, its exporters, requested an injury determination within *three years* subsequent to January 1, 1980. Under the *transitional rule,* if Commerce's determination was negative, the countervailing duty order was revoked. If Commerce's determination was affirmative, or if no injury determination was requested, the outstanding countervailing duty order remained in effect and is subject to administrative review by Commerce under 19 U.S.C. § 1671.

B. *Commerce's decision to access countervailing duties despite lack of injury determination*

■ Plaintiffs argue that once Mexico attained the status of a "country under the Agreement" Commerce must make an affirmative injury determination before it may assess countervailing duties on the Mexican ceramic tile pursuant to 19 U.S.C. § 1671(a). Plaintiffs refer to the *introductory phrase* [1] of 19 U.S.C. § 1303(a)(1) and argue that, although Commerce has broad discretion in enforcement of the countervailing duty laws, it is not entitled to disregard the "plain" meaning of the statute. *Plaintiffs' Memorandum,* at 18–19. Plaintiffs argue that the plain meaning of the *introductory phrase* provides that once an exporting country has been designated as a "country under the Agreement," countervailing duties cannot be imposed on merchandise originating therefrom pursuant to 19 U.S.C. § 1303(a)(1), but can only be imposed pursuant to 19 U.S.C. § 1671(a). *Id.* at 30. Plaintiffs argue that absent the required injury determination, Commerce lacks the statutory authority to impose countervailing duties on ceramic tile imported from Mexico on or after April 23, 1985. *Id.*

In support of their proposition, plaintiffs cite to *Cementos Anahuac del Golfo, S.A. v. United States,* 12 CIT 525, 689 F.Supp. 1191 (1988) ("*Cementos Anahuac*"), aff'd, *Cemen-*

---

1. "Except in the case of an article or merchandise which is the product of a country under the Agreement (within the meaning of 19 U.S.C. § 1671(b) of this title),...."

*tos Guadalajara v. United States*, 879 F.2d 847 (Fed.Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990). The Court in that case held that 1984 importations at issue were made while Mexico was not a "country under the Agreement," and countervailing duties were properly imposed pursuant to 19 U.S.C. § 1303(a)(1), absent an ITC injury determination. The Court stated:

> This status [as a country under the Agreement] and the corresponding statutory entitlement, however, did not become extant for Mexico and its goods until April 23, 1985, the effective date of the Understanding. The PHC from Mexico entered prior to this date was not entitled to the applicable injury determination under United States law. Because the PHC was entered prior to Mexico's recognition as a "country under the Agreement," the imposition of duties on these goods entered prior to April 23, 1985 was not subject to an affirmative injury determination before the final assessment and liquidation stage of the proceedings.

12 CIT at 546, 689 F.Supp. at 1208. Plaintiffs argue that the Court's language in *Cementos Anahuac* infers that the statutory entitlement of 19 U.S.C. § 1671(a) would apply to Mexican merchandise which entered *after* the effective date of the Understanding, even if subject to countervailing duty orders properly issued pursuant to 19 U.S.C. § 1303(a)(1). *Plaintiffs' Memorandum*, at 32. Furthermore, plaintiffs argue that absent the statutory authority to impose countervailing duties on the subject merchandise, Commerce should revoke the countervailing duty order effective the date Mexico attained "country under the Agreement" status, April 23, 1985.

Commerce argues that it reserves the statutory authority to levy countervailing duties pursuant to 19 U.S.C. § 1303(a)(1), on ceramic tile from Mexico subject to countervailing duty orders issued prior to Mexico becoming a "country under the Agreement." Commerce argues that the domestic countervailing duty law and its legislative history makes it clear that Commerce is not required to make an injury determination prior to the assessment of countervailing duties upon du-

tiable products which are the subject of a countervailing duty order issued after January 1, 1980 pursuant to 19 U.S.C. § 1303, even if the exporting country subsequently becomes a "country under the Agreement." Commerce contends that the only exception to the statute was provided for in the *transitional rule*. *Defendant's Memorandum*, at 15 *et seq.* However, the Court notes that this exception is not applicable here because the countervailing duty order on ceramic tile, which is dutiable, was issued after January 1, 1980, at a time when Mexico was not a "country under the Agreement."

Commerce asserts that in the process of interpreting paragraph 5 of the Understanding in *Cementos Anahuac*, the Court did make a general observation to the effect that because the status of a "country under the Agreement" and the right to an injury determination did not become extent for Mexico and its goods until April 23, 1985, the imposition of countervailing duties on goods prior to April 23, 1985 was not subject to an affirmative injury determination. Commerce argues that this general observation cannot be construed as inferring that goods entered on or after April 23, 1985 would be entitled to an injury determination. *Defendant's Memorandum*, at 42. Commerce notes that after making this general observation, the Court concluded that the meaning attributed by Commerce to paragraph 5 of the Understanding (which was that the United States was required to grant an injury determination only for those Mexican products for which no investigations were in progress and not for those products for which countervailing duty orders had already been issued) was entitled to great weight. 12 CIT at 549, 689 F.Supp. at 1210. Commerce continues, that the Court after noting the term "investigations" was defined in Commerce regulations to refer to the time preceding the issuance of a countervailing order and that the definition was published several years prior to the time of the signing of the Understanding, held that the term "investigations in progress," contained in paragraph 5 of the Understanding, does not include administrative reviews pursuant to 19 U.S.C. § 1675. 12 CIT at 549–550, 689 F.Supp. at 1210–11. Thus, Commerce argues that the Court's ruling

essentially turned upon its interpretation of the Understanding. *Defendant's Memorandum,* at 43.

Commerce argues that paragraph 5 of the Understanding requires the United States to provide an injury test only for *new investigations* and *investigations in progress.* Paragraph 5 of the Understanding provides

> With respect to all United States countervailing duty *investigations in progress* concerning products of Mexico as of the date of entry into force of this Understanding, the United States shall ensure that no countervailing duties shall be imposed upon any product of Mexico unless it is determined that the subsidized imports are, through the effects of the subsidy, causing or threatening to cause material injury to an established domestic industry, or *retard materially the establishment of a* domestic industry.

Understanding at para. 5 (emphasis added). Commerce argues that because the investigation of ceramic tile from Mexico was completed in 1982 with the issuance of a countervailing duty order, there was no *investigation in progress* with respect to ceramic tile from Mexico on April 23, 1985, when the Understanding was signed. As a consequence, Mexico's designation as a "country under the Agreement" did not require the United States to grant an injury test to ceramic tile from Mexico prior to the assessment of countervailing duties. *Defendant's Memorandum,* at 47–48.

Plaintiffs argue that the U.S. countervailing duty law and not the Understanding govern the manner in which countervailing duties are imposed under the U.S. law. Plaintiffs contend that although the Understanding is the basis for Mexico's status as a "country under the Agreement," the Understanding does not alter the imposition of countervailing duties under the U.S. law. *Plaintiffs' Memorandum,* at 52. In addition, plaintiffs argue that paragraph 5 of the Understanding concerns only "investigations in progress" as of the date of the Understanding, and does not specifically address the status of preexisting countervailing duty orders. Accordingly, plaintiffs argue that there is no language that indicates that Mexi-

co's status as a "country under the Agreement" is limited, *i.e.,* that the United States has the authority to impose countervailing duties on Mexican ceramic tile absent an injury test after the effective date of the Agreement. *Id.* at 59–60.

As the Court stated in *Cementos Guadalajara, S.A. v. United States,* 12 CIT 307, 327, 686 F.Supp. 335, 351 (1988):

> The starting point for interpreting a statute is the language of the statute itself, which must ordinarily be regarded as conclusive absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980) ...; *Southeastern Community College v. Davis,* 442 U.S. 397, 405 [99 S.Ct. 2361, 2366, 60 L.Ed.2d 980] (1979) ...; *Gilmore Steel Corp. v. United States,* 11 CIT 684, [672 F.Supp. 1459, 1462] (1987). Going behind a statute's plain language to search for a possibly contrary congressional intent is a step the court must take cautiously, even under the best circumstances. *United States v. Locke,* 471 U.S. 84, 95–96 [105 S.Ct. 1785, 1793, 85 L.Ed.2d 64] (1985).

While the Court recognizes "[a]lthough not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight," *Cementos Anahuac,* 12 CIT 525, 549, 689 F.Supp. 1191, 1210 (1988) (*quoting Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 184–185, 102 S.Ct. 2374, 2379, 72 L.Ed.2d 765 (1982)), Commerce regulations provide more persuasive support for defendant's argument.

The definition of "investigations" found in Commerce regulations provides that "[a]n 'investigation' refers to that time between the publication of a notice of initiation and the publication of the earliest of (1) a notice of termination; (2) a negative determination that has the effect of terminating the administrative proceedings; or (3) an Order." 19 C.F.R. § 355.6(b) (1985). A "determination" is defined as "an official decision in the course of a proceeding." 19 C.F.R. § 355.-6(c) (1985). These definitions were published in the Code of Federal Regulations ("Code")

as of the time of negotiation and signing of the Understanding and existed in the Code verbatim for several years prior to that time.

It is clear the Code, in setting forth the procedures for imposing countervailing duties, provides that under 19 U.S.C. § 1303 and 19 U.S.C. § 1671, the word "investigation" is limited to that period of time in a countervailing duty investigation which *precedes* the issuance of a countervailing duty order. The Court therefore holds that because the investigation of ceramic tile from Mexico was completed in 1982 with the issuance of a countervailing order, there was *no* investigation in progress with respect to ceramic tile from Mexico on April 23, 1985.

The language of the Understanding also sheds light on the issue at hand. The opening clause of paragraph 5 of the Understanding concerning the injury test requirement provides: "[f]or the purposes of the *application* of countervailing measures." In addition, paragraph 6 of the Understanding further provides, in pertinent part, as follows:

6. DOMESTIC PROCEDURES AND LAW

*No provision of this Understanding shall be construed to prevent the United States from finally imposing countervailing duties pursuant to its national law on products of Mexico receiving subsidies of any kind....*

Understanding at para. 6 (emphasis added).

As expressly stated in the Understanding, countervailing duties are to be imposed in accordance with United States national law. Therefore, the Court observes United States countervailing duty law is the source of direction and guidance in this matter.

Neither 19 U.S.C. § 1303 nor 19 U.S.C. § 1671 set forth procedures bestowing an injury determination with respect to a countervailing order issued under 19 U.S.C. § 1303 *after* the effective date of the 1979 Act, *i.e.*, January 1, 1980. Nor has Congress specified anywhere that a countervailing order issued without an injury determination pursuant to 19 U.S.C. § 1303 *after* the effective date of the 1979 Act with respect to

dutiable merchandise is to be revoked when an exporting country becomes a "country under the Agreement." Moreover, the Court of Appeals' decision in *Cementos Guadalajara, supra,* leaves unresolved the issue of whether Commerce may impose countervailing duties [2] without an injury determination on dutiable merchandise from Mexico imported *after* Mexico became a country under the Agreement.

It is self-evident that Congress could not have intended to establish as law a meaningless provision and the statute should be construed in accordance with congressional intent. *See Ceramica Regiomontana S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 810 F.2d 1137 (Fed.Cir. 1987). In the case at bar, if ceramic tile remains subject to the assessment of countervailing duties pursuant to 19 U.S.C. § 1303, as intended by Congress, then it cannot be the subject of another proceeding under 19 U.S.C. § 1671. The latter must be interpreted as applying to merchandise from a "country under the Agreement" that are not already the subject of *existing* countervailing duty orders. Given the statutory scheme, including the *transitional rule,* 19 U.S.C. § 1303 should be interpreted as not excluding from its scope dutiable merchandise covered by countervailing duty orders issued pursuant to 19 U.S.C. § 1303 *after* January 1, 1980 and *prior* to the exporting country becoming a "country under the Agreement."

Accordingly, the Court finds that Commerce reasonably interpreted Congress' failure to accommodate either for an injury test for 19 U.S.C. § 1303 law orders on dutiable merchandise issued after January 1, 1980 or for their revocation after the exporting country becomes a "country under the Agreement" as a symptom that Congress proposed the orders to remain in effect as a means of carrying out Congress' goal to encourage early adherence to the Subsidies Code. Based on the analysis and reasoning set forth above, the Court finds Commerce's implementation of 19 U.S.C. § 1303, imposing countervailing duties without an injury deter-

---

**2.** Pursuant to a countervailing order issued under 19 U.S.C. § 1303 *after* January 1, 1980 and

*prior* to Mexico becoming a "country under the agreement."

mination on ceramic tile entered after Mexico's accession to GATT, was reasonable, supported by substantial evidence on the record, and lawful.

### 2. Commerce's Calculation of the Country-wide Countervailing Duty Rate

█ In the contested final results, Commerce calculated the country-wide countervailing duty ("country-wide CVD") rate by weight averaging the benefits received by *non-de minimis*[3] companies by their proportion of United States exports. Zero rate firms and companies with *de minimis* benefits were excluded from the calculation. *See Ceramic Tile From Mexico; Preliminary Results of Countervailing Duty Administrative Review*, 53 Fed.Reg. 49,718 (Dec. 9, 1988); Conf.A.R. # 4, (ITA printouts of final determination).

Plaintiffs' Count Two alleges that Commerce calculated the country-wide CVD rate in a manner subsequently prohibited in *Ipsco, Inc. v. United States*, 899 F.2d 1192 (Fed.Cir.1990) ("*Ipsco*") and this Court's holding in *Ceramica Regiomontana, S.A. v. United States*, 16 CIT ——, Slip Op. 92–71, 1992 WL 107338 (May 19, 1992). *Plaintiffs' Memorandum*, at 69 *et seq.* Pursuant to *Ipsco*, Commerce is required to calculate a country-wide CVD rate applicable to *non-de minimis* firms by weight averaging the benefits received by all companies by their proportion of exports to the United States, inclusive of zero rate firms and *de minimis* firms.

Commerce argues that *Ipsco* does not apply to the case at bar. Commerce attempts to distinguish the present case by arguing that *Ipsco* does not apply to cases where the country-wide CVD rate is greater than *de minimis*. Commerce argues that including companies with zero and *de minimis* rates in the calculation would result in a diluted rate far below the average rate of benefits received by the remaining companies receiving *non-de minimis* benefits. *Id.*, at 63–64. This result, Commerce asserts, would be contrary to 19 U.S.C. § 1671(a), which directs that the subsidized merchandise must be imposed with a countervailing duty "equal to the amount of the net subsidy." *Id.* at 61.

Commerce's attempt to distinguish the case at bar from *Ipsco* is without merit. Contrary to Commerce's interpretation of *Ipsco*, the Court of Appeals in *Ipsco* expressly states that the country-wide CVD rate calculation should be made *inclusive* of those companies receiving no benefit or *de minimis* benefit in instances where such methodology would result in a zero or *de minimis* rate as well as in instances where the country-wide CVD rate is greater than *de minimis*. The Court states:

> Where the overall level of subsidization provided to a particular industry by a foreign government is de minimis, no countervailing duty should be assessed. And, if there is a non-de minimis subsidy being provided, the countervailing duty should not exceed the weighted-average benefit received by *all firms that produce or export the subject goods, including those firms that receive little or no subsidy.*

*Ipsco*, 899 F.2d at 1197 (emphasis added).

Commerce's conclusion regarding its attempt to rationalize its methodology with the dictates of 19 U.S.C. § 1671(a) in calculating the country-wide CVD rate is meritorious but nonetheless conflicts with binding precedent set forth in *Ipsco*. Therefore, the Court is compelled to reject Commerce's methodology. The Court remands this issue for recalculation of the country-wide CVD rate inclusive of benefits and U.S. exports of the zero rate firms and *de minimis* firms for 1986 in accordance with the guidance set forth in *Ipsco*.

### Conclusion

Plaintiffs' Count One, challenging the ITA's determination to impose countervailing duties on ceramic tile imported after April 23, 1985 without an injury determination is denied. The case is remanded to Commerce to recalculate the country-wide CVD rate in accordance with *Ipsco*. The ITA shall report the results of this remand to the Court by August 8, 1994 and the parties shall have 30 days to file comments on the ITA's remand results thereafter.

---

**3.** *"De minimis"* is defined in 19 C.F.R. § 355.7    to mean "less than 0.5% ad valorem."

**440**

## ORDER

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:** that Count One of plaintiffs' complaint is denied; and it is further

**ORDERED, ADJUDGED, AND DECREED:** The case is remanded to Commerce to recalculate the country-wide countervailing duty rate to *non-de minimis* firms by weight averaging the benefits received by all companies by their proportion of exports to the United States, inclusive of zero rate firms and *de minimis* firms pursuant to the methodology set forth in *Ipsco v. United States*, 899 F.2d 1192 (Fed.Cir.1990).