**CRESCENT FOUNDRY CO. PVT. LTD., Nandikeshwari Pvt. Ltd., Carnation Enterprises Pvt. Ltd., Kajaria Iron Castings Pvt. Ltd., Kejriwal Iron & Steel Works, Overseas Iron Foundry Pvt. Ltd., Raghunath Prasad Phoolchand Ltd., R.B. Agarwalla & Co., RSI India Pvt. Ltd., Serampore Industries Pvt. Ltd., Sitaram Madhogarhia & Sons Pvt. Ltd., Super Castings (India), Tirupati International (P) Ltd., UMA Iron & Steel Co., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Alhambra Foundry Inc., Allegheny Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., U.S. Foundry & Manufacturing Co., and Vulcan Foundry, Defendant–Intervenors.**

**Slip Op. 96–200.**
**Court No. 95–09–01239.**

United States Court of
International Trade.

Dec. 26, 1996.

Cameron & Hornbostel (Dennis James, Jr.) for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis) and Robert E. Nielsen, Senior Counsel, Office of Chief Counsel for Import Administration, Department of Commerce, of counsel, for defendant.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal and Robin H. Gilbert) for defendant-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Senior Judge:

This action arises from the 1990 administrative review of a countervailing duty order, first issued by the Department of Commerce in 1980, concerning certain iron metal castings from India exported to the United States, including manhole covers and frames, clean-out covers and frames, and catch basin grates and frames. *Certain Iron Metal Castings from India,* 60 Fed.Reg. 44,849 (Dep't Comm.1995) (final admin. review) [hereinafter *Final Determination* ]; *see Certain Iron Metal Castings from India,* 45 Fed.Reg. 68,650 (Dep't Comm.1980) (original countervailing duty order). The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i) (1994) and 28 U.S.C. § 1581(c) (1994).

## BACKGROUND

At the conclusion of the 1990 administrative review, Commerce amended the countervailing duty rates assigned to the fourteen Indian companies that exported the subject merchandise to the United States in 1990. *Final Determination* at 44,855. The following issues raised during that review are presently in dispute:

(1) Commerce determined that certain payments under the Indian government's Cash Compensatory Support (CCS) program were countervailable. The CCS program rebates indirect taxes and import duties borne by inputs physically incorporated into an exported product. While generally such rebates are not countervailable, Commerce found that some CCS payments made to plaintiff exporters refunded charges for services, not indirect taxes. *Certain Iron Metal Castings from India,* 60 Fed.Reg. 4,592, 4,594 (Dep't Comm.1995) (prelim. admin. re-

view) [hereinafter *Prelim. Determination* ]. These included fees for wharfage, berthage, pilotage, and towage assessed at the Port of Calcutta. *Final Determination* at 44,852. Based on this reclassification, Commerce determined that plaintiffs received an over-rebate in 1990 in the amount of the refunded service charges, resulting in a countervailable subsidy of 4.24% *ad valorem.* (Pls.' Mem. of Points & Authorities in Support of Pls.' R. 56.2 Mot. for J. on Agency R.App. at A–35 (*Country–Wide Rate Calculation,* Nonpub. Doc. No. 27);) *Prelim. Determination* at 4,594. Plaintiffs argue that Commerce should have treated certain of those fees as indirect taxes, rebates of which are noncountervailable.

(2) Commerce assigned eleven companies a common countervailing duty rate of 10.16% *ad valorem* based on the country-wide average benefit received, but assigned "significantly different," company-specific rates to the three remaining investigated companies pursuant to 19 C.F.R. § 355.22(d)(3): Overseas Steel at 18.52%, Sitaram Steel at 22.32%, and Nandikeshwari at 4.29%. *Final Determination* at 44,855; *see Administrative Review of Orders and Suspension Agreements,* 19 C.F.R. § 355.22(d)(3) (1994). To calculate the country-wide 10.16% figure, Commerce weight-averaged the subsidy rates of all fourteen investigated companies, including the three companies with "significantly different" rates. *Prelim. Determination* at 4,592; *Final Determination* at 44,855. Plaintiffs contend that the two companies with significantly higher subsidy rates should not have been included in the country-wide average.

(3) Section 80HHC of the Indian tax code permits exporters to deduct profits derived from the export of goods and merchandise from their taxable income. *Prelim. Determination* at 4,594. Commerce found that this § 80HHC program was a countervailable subsidy, calculated as the difference between the tax paid and the tax that would have been paid absent the deduction taken, or 2.59% *ad valorem* for all but three companies. *Id.;* (Pls.' Br.App. at A–35 (*Country–Wide Rate Calculation,* Nonpub. Doc. No. 27)). Part of the § 80HHC deduction taken

was attributable to CCS payments, some of which Commerce classified as over-rebates. *Final Determination* at 44,854. Plaintiffs argue that Commerce should have excluded that part of the deduction from its calculation of the § 80HHC subsidy.

(4) Payments received under the Indian government's International Price Reimbursement Scheme (IPRS), which reimbursed exporters for the difference in price between higher-priced domestic pig iron and its foreign equivalent, were also deductible under § 80HHC. *Id.* Commerce found that none of the plaintiffs had received IPRS payments attributable to the subject merchandise in 1990. *Prelim. Determination* at 4,595. Plaintiffs argue that Commerce acted *ultra vires* when it included that part of the deduction in its calculation of the § 80HHC subsidy.

**DISCUSSION**

Once Commerce makes a final determination in a countervailing duty investigation, the court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

**I.**

According to the GATT *Illustrative List of Export Subsidies,* a countervailable benefit exists when the remission of prior stage cumulative indirect taxes and import duties on goods or services used in the production of exports exceeds the remission of like taxes on like products sold domestically. *Agreement on Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade (Relating to Subsidies and Countervailing Measures),* Apr. 12, 1979, Annex items (h–i), 31 U.S.T. 513, 546–47 [hereinafter *Illustrative List* ]. There is an exception, however,

for taxes levied on goods that are physically incorporated into the exported product. Remission of those taxes is not countervailable. *Id.* item (h).

19 U.S.C. §§ 2502(1), 2503(c)(5) (1988) have incorporated the *Illustrative List* into United States domestic law. *Creswell Trading Co. v. United States,* 15 F.3d 1054, 1057 n. 4 (Fed.Cir.1994); *Creswell Trading Co. v. United States,* 20 CIT ——, 936 F.Supp. 1072, 1075 (1996). Commerce implements countervailing duty law according to its regulations in 19 C.F.R. §§ 355.1–355.51 (1994). Commerce has proposed a set of additional regulations codifying its already existing practice with respect to the identification and measurement of subsidies. *Notice of Proposed Rulemaking and Request for Public Comments: Countervailing Duties,* 54 Fed. Reg. 23,366 (1989) (to be codified at §§ 355.41–355.51) [hereinafter *Proposed Rules* ]. The proposed regulations state that "the nonexcessive . . . remission . . . of prior stage cumulative indirect taxes or import charges levied on goods that are physically incorporated . . . in the exported product shall not confer a countervailable benefit." *Id.* at 23,382; *see also id.* at 23,373 (summarizing proposed regulation). Commerce will not countervail a rebate if it finds that "(1) the [rebate] program operates for the purpose of rebating prior stage cumulative indirect taxes and/or import charges; (2) the [foreign] government accurately ascertained the level of the rebate; and (3) the government reexamines its schedules periodically to reflect the amount of actual indirect taxes and/or import charges paid." *Prelim. Determination* at 4,594; *Proposed Rules* at 23,382.

■ Even if the tax rebate program meets this general threshold requirement, Commerce will then examine whether there was an over-rebate in the specific period under review. There is an over-rebate if exporters receive a rebate greater than the amount actually paid in indirect taxes and import duties on inputs physically incorporated into the subject merchandise. If so, the excess is a countervailable benefit. *Prelim. Determination* at 4,594; *Proposed Rules* at 23,373.

Through the CCS program, the government of India provides a cumulative tax rebate, payable on export, for certain taxes incurred in the production of a finished good. *Prelim. Determination* at 4,594. In prior administrative reviews, Commerce determined that the CCS program rebated prior stage cumulative indirect taxes and import charges, and that the government of India periodically reexamined its schedules and maintained an accurate rebate level. *Prelim. Determination* at 4,594; *see, e.g., Certain Iron Metal Castings from India,* 56 Fed. Reg. 41,650, 41,653 (Dep't Comm.1991) (1989 prelim. admin. review). Because the program met the three conditions outlined above, Commerce had not countervailed CCS rebate payments in the past. *Prelim. Determination* at 4,594.

■ During the 1990 review period, Indian manufacturers moved from domestic to imported pig iron as the basic raw material used in the production of exported castings. *Id.* Exporters received CCS rebate payments for government fees related to the imported pig iron. Commerce found that some of those fees were charges for services rendered. *Id.* Services cannot be physically incorporated into a product. Consequently, rebates of service charges do not fall under the exception in item (h) of the *Illustrative List.* CCS payments rebating service charges are therefore countervailable over-rebates. *Id.*

Plaintiffs argue that Commerce miscalculated the CCS over-rebate by treating port dues and wharfage fees as service charges, claiming that they are more properly classified as noncountervailable rebates of indirect taxes. (Pls.' Br. at 21–22.) The port dues are a 3.5 rupee per net registered vessel ton charge levied by the Calcutta Port Trust, part of the Government of India, on all ships entering the Port of Calcutta. *Cash Compensatory Support (CCS) Program,* Pub.Doc. No. 68 attach. A (May 26, 1994) (included in Pls.' Br.App. at A–36, A–38). The wharfage fee is a 70 rupee per ton charge for loading and unloading goods. It is discounted twenty-five percent if the loading is done by the importer's own labor and equipment. *Id.*

■ Commerce provided both the investigated companies and the Government of

India with an opportunity to demonstrate that the port dues and wharfage fees were indirect taxes as described in items (h) and (i) of the *Illustrative List.* Their responses relied principally on a statement by the Government of India that the fees were "tantamount to taxes" because they were paid to the Calcutta Port Trust, a division of the Indian government. *Cash Compensatory Support (CCS) Program,* Pub.Doc. No. 68 at 2 (May 26, 1994) (included in Pls.' Br.App. at A–36, A–37); *Final Determination* at 44,852. This is not adequate in itself to demonstrate that the fees were taxes rather than service charges. Governments collect both forms of revenue, and the label assigned to a particular fee does not definitively indicate its nature. *See United States Shoe Corp. v. United States,* 19 CIT ——, ——, 907 F.Supp. 408, 411 (1995) (citing *Fairbank v. United States,* 181 U.S. 283, 304, 21 S.Ct. 648, 656–57, 45 L.Ed. 862 (1901)).

■ Plaintiffs contend that all of the port dues and 75% of the wharfage tax are "in the nature of taxes" because they are not tied to the provision of any service. *Final Determination* at 44,852. The evidence in the record does not support that claim. The wharfage fee is tied to a service: the loading and unloading of goods. It is true that importers pay 75% of the fee even if they supply their own labor and equipment. However, even assuming that the real cost of wharfage is only 25% of the wharfage fee, a service charge does not become a tax merely because it does not accurately reflect the actual cost of providing the service. The port dues are also service-related. They are charges assessed on users of a developed facility, an improved navigable port requiring ongoing maintenance. As plaintiffs provided no evidence to the contrary, Commerce reasonably concluded that the port dues were tied to the provision of a navigable harbor.

Plaintiffs conceded that a number of other expenses reimbursed through the CCS program were service charges. (Pls.' Reply to Def.'s & Def.–Intervenors' Opp'n at 20 (referring to pilotage and towage charges).) When plaintiffs did not put enough information in the record to support a conclusion that the port dues and wharfage fees differed

in nature from those expenses, Commerce was justified in concluding that they too were service charges, rebates of which are countervailable. *See Industrial Fasteners Group, American Importers Ass'n v. United States,* 710 F.2d 1576, 1582 & n. 10 (Fed.Cir. 1983) (in the absence of information making at least a prima · facie case that CCS payments were noncountervailable, Commerce properly imposed a countervailing duty). The court finds that Commerce's determination that an over-rebate existed is supported by substantial evidence and is in accordance with law.

## II.

At the time of the administrative review, the statute governing countervailing duty determinations for countries that were signatories of the GATT Subsidies Code provided that

If—

(1) the administering authority determines that—

(A) a country under the Agreement . . .

is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of a class or kind of merchandise imported . . . into the United States, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured . . .

by reason of imports of that merchandise . . . ,

then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, *equal to the amount of the net subsidy.*

19 U.S.C. § 1671(a) (1988) (emphasis added). Neither the statute nor the applicable regulations specifically defined how that "net subsidy" should be calculated. *Ipsco Inc. v. United States,* 899 F.2d 1192, 1195 (Fed.Cir.1990); *see* 19 U.S.C. §§ 1671–1671h (1988); 19 C.F.R. §§ 355.1–355.51 (1994).

In determining the net subsidy for iron castings, Commerce first calculated a subsi-

dy rate for each company subject to review, then weight-averaged the rates according to each company's share of the total subject Indian exports to the United States. *Final Determination* at 44,850. In accordance with its regulations, Commerce then assigned a separate countervailing duty rate to companies whose individual rates differed significantly from the country-wide weighted average. *Id.; see Administrative Review of Orders and Suspension Agreements,* 19 C.F.R. § 355.22 (1994). A "significant differential" is defined in relevant part as "[a] difference of the greater of at least five percentage points, or 25 percent, from the weighted-average net subsidy calculated on a country-wide basis." 19 C.F.R. § 355.22(d)(3)(i) (1994). The companies assigned individual rates were treated separately for countervailing duty and cash deposit assessment purposes, but their "significantly different" individual rates were included in the calculation of the weighted average, causing the country-wide rate assigned to the majority to be higher than it would otherwise have been. *Final Determination* at 44,855.

Plaintiffs argue that by including firms that received significantly higher subsidies in its calculation, while also applying the high rates separately to individual exporters, Commerce inflated the resulting country-wide average rate and double-counted the higher subsidies. (Pls.' Br. at 13–15.) The argument is similar to that raised in *Ceramica Regiomontana, S.A. v. United States,* 18 CIT 376, 386, 853 F.Supp. 431, 439 (1994), *rev'd on other grounds,* 64 F.3d 1579 (Fed. Cir.1995), in which Commerce argued that including firms with *de minimis* subsidies in the country-wide average would dilute the average rate. That argument was rejected as "meritorious, but nonetheless conflict[ing] with binding precedent" set forth in *Ipsco Inc. v. United States,* 899 F.2d 1192 (Fed.Cir. 1990). *Ceramica Regiomontana,* 18 CIT at 387, 853 F.Supp. at 439. *Ipsco* governs here as well.

In *Ipsco,* an investigation of Canadian oil country tubular goods revealed that nine of eleven investigated firms received subsidies below the *de minimis* level. Commerce

found that the country-wide rate applicable to the two remaining firms was the rate found for Ipsco, the only significantly subsidized firm that responded to Commerce's inquiries. In doing so, Commerce excluded the *de minimis* rates of the remaining nine firms from its calculation. *Ipsco,* 899 F.2d at 1193–94. The court held that Commerce's methodology was unreasonable because it did not produce a country-wide countervailing duty rate that bore "some relation to the approximate average rate of subsidization of the subject goods." *Id.* at 1197. The court concluded that country-wide countervailing duty rates must reflect the subsidies received by all firms that produce or export the goods, even those that receive significantly lower benefits. *Id.; Ceramica Regiomontana,* 18 CIT at 387, 853 F.Supp. at 439.

■ The purpose of countervailing duty law is to neutralize government-sponsored subsidization on a country-wide basis. To that end, at the time of the 1990 administrative review, Congress had established a presumption in favor of country-wide countervailing duty rates. 19 U.S.C. § 1671e(a) (1988) ("[T]he administrating authority shall publish a countervailing duty order which ... shall presumptively apply to all merchandise of such class or kind exported from the country investigated[.]"). Significantly different rates were exceptions to this general rule, recognizable as "significantly different" only when compared to a "weighted-average net subsidy calculated on a country-wide basis[,]" or "to a net subsidy of zero (or *de minimis* )[.]" 19 C.F.R. § 355.22(d)(3) (1994); *see* 19 U.S.C. § 1671e(a)(2) (1988) ("except that if ... there is a significant differential between companies receiving subsidy benefits ... the order may provide for differing countervailing duties"). It would be inconsistent with the concept of a country-wide rate to exclude companies receiving a significantly different benefit, whether higher or lower, when determining the amount of the weighted-average net subsidy. *See Ipsco,* 899 F.2d at 1197.

■ Plaintiffs are correct that including the highest subsidy rates in a country-wide average applied to firms receiving smaller subsidies, while also applying the high rates

separately to individual exporters, results in a higher duty than applying individual rates to each company or using the same average rate for every firm. This "double-counting" is a consequence of the then-existing statutory exception for significantly different rates. It will not occur in investigations initiated after January 1, 1995 because Congress has revised the countervailing duty law, directing Commerce to use either a country-wide average or individual rates, but not both. 19 U.S.C. §§ 1671b(d), 1671d(c)(5) (1994); (see Pls.' Reply at 12 n. 10; Def.'s Mem. in Opp'n to Pls.' R. 56 Mot. for J. upon Agency R. at 11 n. 13.) The general rule now favors individual countervailing duty rates for each investigated company. *Uruguay Round Agreements Act: Statement of Administrative Action, reprinted in* H.R.Doc. 103–316 (1994) at 656, 941–42. In instances where the number of exporters or producers is too large for individual rates to be practical, Commerce may continue to use a single country-wide rate, calculated "on the basis of aggregate data," but there is no longer an exception for firms with significantly different rates. *Id.* at 941; *see* 19 U.S.C. § 1671d(c)(5) (1994). Where Commerce uses the country-wide method, there will be no issue of double-counting because all firms will receive the same weighted-average rate, calculated "based on industry-wide data regarding the use of subsidies determined to be countervailable." 19 U.S.C. § 1671d(c)(5)(B) (1994).

▇ The court finds that Commerce's methodology was reasonable and in accordance with the law as it then stood. Commerce correctly determined that under *Ceramica Regiomontana* and *Ipsco* it was required to include all companies receiving a significantly different benefit, whether higher or lower, in its calculation of the country-wide rate applied to the subject merchandise.

## III.

▇ Section 80HHC of the Indian tax code permits exporters to deduct profits derived from the export of goods and merchandise from taxable income. Commerce found that § 80HHC was countervailable "because receipt of benefits ... is contingent on export performance." *Prelim. Determination* at 4,594 (citing *Certain Iron Metal Castings from India,* 56 Fed.Reg. 52,521 (Dep't Comm.1991) (1989 final admin. review)). All but one company indicated that its entire taxable income was export-related, and claimed a § 80HHC deduction for the full amount. (Pls.' Br. at 23–25; *see, e.g.,* Pls.' Br.App. at 31–34 (RSI India Pvt. Ltd. 1990 tax return).) Commerce therefore used the entire deduction to determine the subsidy received under the program, calculated as the difference between the tax paid and the tax that would have been paid absent the deduction. *Prelim. Determination* at 4,594; *Final Determination* at 44,854.

Under the Indian tax system, rebates received under the CCS program are included in taxable income. (*See, e.g.,* Pls.' Br.App. at 31–34 (RSI India Pvt.Ltd.1990 tax return).) While generally CCS rebates are not countervailable, Commerce determined that certain CCS payments in 1990 were actually countervailable rebates of service charges. *See* discussion *supra* pt. I. Part of the § 80HHC subsidy therefore consisted of the value of CCS over-rebates, which were already subject to a countervailing duty. It is that part of the subsidy that plaintiffs dispute.

Defendant argues that since CCS payments are merely reimbursement for previous expenses, they cannot result in a profit. They therefore do not constitute a part of the profit figure exempted from taxation, and are not double-counted when that exemption is countervailed. (Def.'s Br. at 41–42.) The argument is without merit. Section 80HHC exempts a company's entire export-related profit from taxation. This bottom-line figure reflects the sum total of revenues and expenses for the year. CCS payments necessarily affect that bottom line; a company that incurs expenses without reimbursement will have a lower profit margin than if it had been reimbursed. They therefore constitute a part of any profit figure exempted from taxation under § 80HHC.

Plaintiffs agree that the portion of the § 80HHC deduction attributable to CCS payments reimbursing *indirect taxes* is a coun-

tervailable subsidy. They concede that "if the CCS paid ... had not been found to be a direct subsidy, then exempting it from taxation, which is the ultimate effect of 80HHC, would, of course, be a separate subsidy." (Pls.' Reply at 29.) However, plaintiffs claim that Commerce should not have countervailed the portion of the § 80HHC subsidy attributable to CCS payments classified as *over-rebates*. They argue that "countervailing a tax deduction while at the same time also countervailing revenues that make up that deduction double counts the subsidy[,]" (Pls.' Br. at 28), and that therefore Commerce countervailed more than the actual benefit received, in violation of 19 U.S.C. § 1671(a) (1988).

Plaintiffs' argument mirrors Commerce's reasoning in an earlier determination, *Carbon Steel Wire Rod from Argentina*, 47 Fed. Reg. 42,393 (Dep't Comm.1982) (suspension of investigation) [hereinafter *Argentine Wire Rod*], in which Commerce declined to countervail an income tax exemption for an indirect tax rebate scheme that paralleled India's CCS program. As in this case, Commerce had determined that while Argentina's *reembolso* rebate scheme was generally noncountervailable, some payments were excessive over-rebates and could be countervailed. In the course of that investigation, petitioners argued that "exemption of *reembolso* payments from the income tax constitutes an additional bounty or grant that is countervailable." *Id.* at 42,395. Commerce replied that "the *whole* of a non-excessive rebate of indirect taxes—including any secondary tax effects—is non-countervailable[.]" *Id.* This is contrary to plaintiffs' concession above that § 80HHC deductions allowed for nonexcessive CCS payments are a countervailable subsidy. Regarding over-rebates, Commerce stated that:

> With respect to that portion of the *reembolso* determined to confer a bounty or grant ... we conclude that there is no additional benefit attributable to the income tax exemption. Since we have separately determined the full benefit from the over-rebate, we would be double-counting if we were to consider that a countervailable benefit is conferred by its exemption from the income tax. Further, the De-

partment consistently has taken the position that it will not examine the income tax consequences of non-income tax subsidy programs. Whether and to what extent each producer's or exporter's benefits from a program unrelated to income taxes would be increased or diminished as a consequence of application of its country's income tax laws is a difficult and complex matter which is neither feasible nor necessary to explore.

*Id.* Commerce reaffirmed its reasoning in a second investigation involving the *reembolso* in 1988. *Certain Welded Carbon Steel Pipe and Tube Products from Argentina*, 53 Fed. Reg. 37,619, 37,626 (Dep't Comm.1988) (final aff. determination) [hereinafter *Argentine Pipe and Tube* ]. Thus, in the two instances in which Commerce has addressed the countervailability of a tax exemption for rebates of indirect taxes, it has adopted an interpretation contradictory to its position here.

No investigation since *Argentine Wire Rod* has addressed this double-counting issue. Only one investigation since *Argentine Pipe and Tube* has involved a tax-exempt countervailable subsidy. In *Certain Steel Products from Belgium*, 58 Fed.Reg. 37,273 (Dep't Comm.1993) (final aff. determination) [hereinafter *Belgian Steel* ], certain companies received countervailable cash grants for expanding enterprises within designated development zones. *Id.* at 37,275. The grants were also exempt from corporate income tax. Commerce found the exemption to be countervailable, despite the fact that the grants themselves had already been countervailed. However, because Commerce found that all investigated companies received a benefit of 0.00 percent from the tax exemption, the issue of double-counting did not arise. *Id.* at 37,283.

Commerce has not stated in the record whether it considered and rejected its prior reasoning in *Argentine Wire Rod* and *Argentine Pipe and Tube* in the course of the investigation at issue here. The explanation for its decision not to subtract CCS over-rebates from the § 80HHC subsidy is somewhat cryptic. *See Final Determination* at 44,854–55. It is clear that tax exemptions

based on export performance, such as § 80HHC, are generally countervailable. *Illustrative List* item (e) (Countervailable subsidies include "[t]he full or partial exemption ... specifically related to exports, of direct taxes ... paid or payable by industrial or commercial enterprises."); *see, e.g., Certain Pasta ("Pasta") from Turkey,* 61 Fed.Reg. 30,366, 30,370 (Dep't Comm.1996) (final aff. determination); *Belgian Steel,* 58 Fed.Reg. 37,273; *Extruded Rubber Thread from Malaysia,* 57 Fed.Reg. 38,472 (Dep't Comm. 1992) (final aff. determination). It is also clear that Commerce has a policy of disregarding the secondary income tax consequences of non-income tax subsidy programs. That is, when companies pay higher taxes as a result of receiving a subsidy, Commerce does not subtract the added taxes from the amount of the subsidy when calculating the benefit conferred. *Geneva Steel v. United States,* 20 CIT ——, ——, 914 F.Supp. 563, 609–10 (1996) (sustaining Commerce's refusal to offset countervailable benefits by the taxes paid as a result of receiving subsidy benefits); *IPSCO, Inc. v. United States,* 12 CIT 359, 366–67, 687 F.Supp. 614, 621 (1988). The countervailing duty statute provides an exclusive list of offsets deductible from a gross subsidy to determine the net subsidy, and tax consequences are not included in that list. 19 U.S.C. § 1677(6) (1988); *see also Geneva Steel,* 20 CIT at ——, 914 F.Supp. at 609–10 (list of offsets is narrowly drawn and all-inclusive).

Commerce cited this policy of disregarding secondary tax consequences as the reason for refusing to eliminate countervailed CCS payments from its calculation of the § 80HHC subsidy. *Final Determination* at 44,855. However, the logic of that policy would seem to dictate the opposite result: that when companies pay lower taxes as a result of receiving a subsidy, Commerce should not add the additional tax benefit to the amount of the subsidy when calculating the benefit conferred. That is, it should not countervail the tax exemption for that subsidy. This interpretation would conform with Commerce's reasoning in *Argentine Wire Rod* and *Argentine Pipe and Tube.*

Should Commerce adopt this interpretation, it would not be excessively burdensome to eliminate CCS over-rebates from the § 80HHC subsidy countervailed. Commerce has already obtained each company's tax return, which lists the company's taxable income and the amount deducted for CCS payments. It has also already determined the over-rebate received by each company. Commerce need only subtract the over-rebate from taxable income and recalculate the tax that each company would have owed absent the modified § 80HHC subsidy. It can do so without any additional investigation.

Commerce is not required to follow its reasoning in *Argentine Wire Rod* if new arguments or facts support a different conclusion. *Hussey Copper, Ltd. v. United States,* 17 CIT 993, 997, 834 F.Supp. 413, 418 (1993); *see Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1209, 704 F.Supp. 1075, 1088 (1988). It may repudiate its prior reasoning, it may narrow the zone in which that reasoning applies, or it may find that particular facts in this case justify a departure from the general rule. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973). However, "an agency must either conform itself to its prior decisions or explain the reasons for its departure." *Hussey Copper,* 17 CIT at 997, 834 F.Supp. at 418 (quoting *Citrosuco Paulista,* 12 CIT at 1209, 704 F.Supp. at 1088). If Commerce intends to depart from *Argentine Wire Rod,* it must clearly indicate its reasons for doing so, thereby allowing the court to "understand the basis of the agency's action and ... judge the consistency of that action with the agency's mandate." *Id.* at 998, 834 F.Supp. at 419 (quoting *Atchison,* 412 U.S. at 808, 93 S.Ct. at 2375); *cf. British Steel plc v. United States,* 19 CIT ——, ——, 879 F.Supp. 1254, 1298 (1995) ("Commerce must provide a clear statement of the evidence upon which the agency based its methodology[.]").

Commerce has not included such an analysis in the record. Consequently, the court must remand this issue (1) for an explanation of whether *Argentine Wire Rod* continues to reflect current policy and (2) for a reexamination of whether countervailing the portion

of the § 80HHC subsidy attributable to CCS over-rebates double-counts the CCS subsidy.

## IV.

The Indian government's International Price Reimbursement Scheme (IPRS) reimburses exporters for the difference in price between higher-priced domestic pig iron and its foreign equivalent. Under Indian law, revenue received under the IPRS program is also included in taxable income. (*See, e.g.,* Pls.' Br.App. at 31–34 (RSI India Pvt. Ltd. 1990 tax return).) Commerce found that none of the IPRS payments plaintiffs received in 1990 were associated with subject merchandise exported to the United States. *Prelim. Determination* at 4,595. It also rejected petitioners' argument that IPRS payments for other merchandise indirectly benefited exports of the subject castings. *Final Determination* at 44,851–52, 44,853–54 (Comments 3, 7, and 8). Plaintiffs contend that since IPRS payments did not benefit the subject merchandise in 1990, Commerce should not have countervailed the portions of the § 80HHC deductions attributable to those payments. (Pls.' Br. at 28–29.)

Defendant argues that since IPRS payments are merely reimbursement for previous expenses, they cannot result in a profit, and therefore do not constitute a part of the profit figure exempted from taxation under § 80HHC. (Def.'s Br. at 48–54;) *see Final Determination* at 44,854 (rejecting argument when presented by defendant-intervenors). This argument is without merit, for the reasons discussed in the section above.

■ Commerce's *Final Determination* relied on a different argument: that "adjust[ing] the benefit of the 80HHC tax program to account for ... IPRS rebates" would be an impermissible offset to a countervailable subsidy. *Final Determination* at 44,854–55. The countervailing duty statute provides an exclusive list of offsets deductible from a gross subsidy to determine the net subsidy received. 19 U.S.C. § 1677(6) (1988). Commerce is correct that this statutory list of offsets is narrowly drawn and all-inclusive. *Geneva Steel,* 20 CIT at ——, 914 F.Supp. at 609–10. The pertinent question, however, is not whether Commerce should

permit an offset not included in the list, but whether 1990 IPRS payments should be included in the § 80HHC gross subsidy at all. Because the only subsidies relevant in a review of a countervailing duty order are those tied to merchandise subject to that order, *see Proposed Rules* at 23,374–75 (to be codified at 19 C.F.R. § 355.47(a)), benefits conferred on other merchandise are necessarily excluded from the "gross subsidy" referred to in the statute.

■ When Commerce specifically finds that a rebate program did not benefit merchandise subject to the countervailing duty order under review, Commerce cannot then countervail any of the benefit received through that program. "Grants that are tied to production or export of only non-subject merchandise do not provide a countervailable benefit to the subject merchandise." *Final Determination* at 44,854; *Proposed Rules* at 23,374–75 (1989). This includes any beneficial effect on recipients' tax liability. *Cf. Argentine Wire Rod* at 42,395 ("the *whole* of a non-excessive rebate of indirect taxes—including any secondary tax effects—is noncountervailable[.]"). Since the IPRS program did not benefit subject merchandise in 1990, Commerce should not have countervailed the portion of the § 80HHC tax reduction attributable to that program.

Commerce may only exercise its authority to set countervailing duties through a countervailing duty order on specific merchandise. 19 U.S.C. §§ 1671(a), 1671e (1988). Its decision to countervail a tax benefit attributable to a subsidy of nonsubject merchandise exceeded its statutory authority and was not in accordance with law. Accordingly, the court remands this issue for recalculation of the benefit received through § 80HHC after subtracting the value of IPRS payments received from each company's taxable income.

## CONCLUSION

For the reasons stated above, Commerce's determination that reimbursement for port dues and wharfage fees constituted a countervailable subsidy is sustained. Its methodology for calculating the country-wide rate is

also sustained. Commerce's calculation of the § 80HHC subsidy is remanded for recalculation in a manner consistent with parts three and four of this opinion. Remand results are due within forty-five (45) days of the date this opinion is entered. Any party contesting the results shall file comments or responses within thirty (30) days of the remand results, after which Commerce will have fifteen (15) days in which to file a reply.