**KAJARIA IRON CASTINGS PVT. LTD., Calcutta Ferrous Ltd., Crescent Foundry Co. Pvt. Ltd., Commex Corporation, Dinesh Brothers, Nandikeshwari Pvt. Ltd., Carnation Enterprises Pvt. Ltd., Kejriwal Iron & Steel Works, R.B. Agarwalla & Company, RSI Limited, Serampore Industries Pvt. Ltd., Tirupati International (P) Ltd., and UMA Iron & Steel Co., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Alhambra Foundry, Inc., Allegheny Foundry Co., Deeter Foundry, Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., U.S. Foundry & Manufacturing Co., and Vulcan Foundry, Inc., Defendant–Intervenors.**

Slip Op. 97–10.
Court No. 95–09–01240.

United States Court of
International Trade.

Jan. 29, 1997.

Cameron & Hornbostel, Washington, D.C. (Dennis James, Jr.) for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis at oral argument; Rhonda K. Schnare on the brief) and Robert E. Nielsen, Senior Counsel, Office of Chief Counsel for Import Administration, Department of Commerce, of counsel, Washington, D.C., for defendant.

Collier, Shannon, Rill & Scott, Washington, D.C. (Paul C. Rosenthal and Robin H. Gilbert), for defendant-intervenors.

## MEMORANDUM OPINION

DiCARLO, Senior Judge:

This action arises from the 1991 administrative review of a countervailing duty order, first issued by the Department of Commerce in 1980, concerning certain iron metal castings from India exported to the United States, including manhole covers and frames, clean-out covers and frames, and catch basin grates and frames. *Certain Iron Metal Castings from India,* 60 Fed.Reg. 44,843 (Dep't Comm.1995) (final admin. review) [hereinafter *Final Determination* ]; *see Certain Iron Metal Castings from India,* 45 Fed.Reg. 68,650 (Dep't Comm.1980) (original countervailing duty order). Commerce also conducted an administrative review of the 1990 period. *Certain Iron Metal Castings from India,* 60 Fed.Reg. 44,849 (Dep't Comm.1995) (final admin. review). That review was discussed in *Crescent Foundry Co. Pvt. Ltd. v. United States,* 20 CIT ——, 951 F.Supp. 252 (1996), which governs many of the issues presented here. The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(i) (1994) and 28 U.S.C. § 1581(c) (1994).

## BACKGROUND

At the conclusion of the 1991 administrative review, Commerce amended the counter-

vailing duty rates assigned to the fourteen Indian companies that exported the subject merchandise to the United States in 1991. *Final Determination* at 44,849. The following issues raised during that review are presently in dispute:

(1) Commerce determined that certain payments under the Indian government's Cash Compensatory Support (CCS) program were countervailable. The CCS program rebates indirect taxes and import duties borne by inputs physically incorporated into an exported product. While such rebates are generally not countervailable, *see Crescent Foundry*, 951 F.Supp. at 254, Commerce found that some CCS payments made to plaintiff exporters refunded charges for services, not indirect taxes. *Certain Iron Metal Castings from India*, 60 Fed.Reg. 4,596, 4,598 (Dep't Comm.1995) (prelim.admin.review) [hereinafter *Prelim. Determination*]. These included fees for wharfage, berthage, pilotage, and towage assessed at the Port of Calcutta. *Final Determination* at 44,845; *Prelim. Determination* at 4,598. Based on this re-classification, Commerce determined that plaintiffs received an over-rebate in 1991 in the amount of the refunded service charges, resulting in a countervailable subsidy of 0.41% *ad valorem*. (Pls.' Mem. of Points & Authorities in Support of Pls.' R. 56.2 Mot. for J. on Agency R.App. at A-42 (*CountryWide Rate Calculation*, Nonpub. Doc. No. 14);) *Prelim. Determination* at 4,598.

Plaintiffs do not dispute this finding, but argue that Commerce double-counted the CCS over-rebate when it also countervailed § 80HHC of the Indian tax code. Section 80HHC permits exporters to deduct profits derived from the export of goods and merchandise from their taxable income. *Prelim. Determination* at 4,597–98. Commerce found that § 80HHC was a countervailable subsidy, calculated as the difference between the tax paid and the tax that would have been paid absent the deduction taken, or 1.47% *ad valorem* for all but three companies. *Id.; cf.* (Pls.' Br.App. at A-42 (*Country-Wide Rate Calculation*, Nonpub. Doc. No. 14) (listed as 1.46%).) Part of the § 80HHC deduction was attributable to CCS payments classified as over-rebates. *Final Determination* at 44,848. Plaintiffs argue that since Commerce had already countervailed the over-rebates, it should not have treated that part of the § 80HHC deduction as a subsidy.

(2) Payments received under the Indian government's International Price Reimbursement Scheme (IPRS) were also deductible under § 80HHC. The IPRS program reimbursed exporters for the difference in price between higher-priced domestic pig iron and its foreign equivalent. *Id.* Commerce found that none of the plaintiffs had received IPRS payments attributable to the subject merchandise in 1991. *Prelim. Determination* at 4,599. Plaintiffs argue that Commerce should not have treated the part of the § 80HHC deduction attributable to IPRS payments as a subsidy subject to this countervailing duty order.

(3) Commerce assigned eleven companies a common countervailing duty rate of 5.53% *ad valorem* based on the country-wide average benefit received, and assigned "significantly different," company-specific rates to the three remaining investigated companies pursuant to 19 C.F.R. § 355.22(d)(3): Dinesh at 0.00%, Kajaria at 16.14%, and Super Castings at 41.75%. To calculate the country-wide 5.53% figure, Commerce weight-averaged the subsidy rates of all fourteen investigated companies, including the three companies with "significantly different" rates. *Prelim. Determination* at 4,596; *Final Determination* at 44,849. Plaintiffs contend that Commerce should not include companies with significantly higher subsidy rates in the country-wide average, and that therefore Kajaria and Super Castings should have been excluded from the calculation.

(4) Commerce determined the rate for Super Castings using "best information available" (BIA). *Prelim. Determination* at 4,597; *see Administrative Review of Orders and Suspension Agreements*, 19 C.F.R. § 355.22(d)(3) (1994). Plaintiffs argue that Commerce should not include BIA rates in the country-wide average. They claim that therefore even if Commerce correctly included significantly higher rates in the country-

wide rate, it should not have included the Super Castings BIA rate in its calculation.

## DISCUSSION

■ Once Commerce makes a final determination in a countervailing duty investigation, the court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### I.

■ Of the four issues presented above, three are governed by this court's analysis in *Crescent Foundry.* On the issue of whether Commerce impermissibly doubled-counted the CCS overrebate, the court in *Crescent Foundry* remanded for a fuller explanation of Commerce's reasoning. *Crescent Foundry,* 951 F.Supp. at 261. In both *Crescent Foundry* and the present case, the record made no reference to two prior determinations in which Commerce adopted a position contradictory to its current interpretation by declining to countervail an income tax exemption for a similar over-rebate. *See Carbon Steel Wire Rod from Argentina,* 47 Fed. Reg. 42,393 (Dep't Comm.1982) (suspension of investigation) [hereinafter *Argentine Wire Rod* ]; *Certain Welded Carbon Steel Pipe and Tube Products from Argentina,* 53 Fed. Reg. 37,619, 37,626 (Dep't Comm.1988) (final aff. determination). For the reasons discussed in the *Crescent Foundry* opinion, the court must remand this issue (1) for an explanation of whether *Argentine Wire Rod* continues to reflect current policy and (2) for a reexamination of whether countervailing the portion of the § 80HHC subsidy attributable to CCS over-rebates double-counts the CCS subsidy.

■ *Crescent Foundry* also addressed the second question: whether Commerce impermissibly countervailed the part of the § 80HHC deduction attributable to IPRS payments. *Crescent Foundry,* 951 F.Supp. at 262. The court held that Commerce's decision to countervail a tax benefit attributable to a subsidy of nonsubject merchandise exceeded its statutory authority and was not in accordance with law. *Id.* at 262. As in *Crescent Foundry,* none of the plaintiffs here received IPRS payments attributable to the subject merchandise in 1991. *Prelim. Determination* at 4,599. Accordingly, the court remands this issue for recalculation of the benefit received through § 80HHC in a manner consistent with *Crescent Foundry.*

■ Third, *Crescent Foundry* upheld Commerce's methodology for calculating the country-wide countervailing duty rate applied to the subject merchandise. *Crescent Foundry,* 951 F.Supp. at 259. Commerce correctly determined that under *Ipsco* and *Ceramica Regiomontana* it was required to include all companies receiving a significantly different benefit, whether higher or lower, in its calculation of the country-wide rate. *See Ipsco Inc. v. United States,* 899 F.2d 1192 (Fed.Cir.1990); *Ceramica Regiomontana, S.A. v. United States,* 18 CIT 376, 853 F.Supp. 431 (1994), *rev'd on other grounds,* 64 F.3d 1579 (Fed.Cir.1995). For the reasons stated in *Crescent Foundry,* Commerce's methodology is sustained here as well.

### II.

■ *Crescent Foundry* did not address the question of whether Commerce may include BIA rates in its calculation of a countrywide rate. The court finds that it may, for the reasons indicated below.

The administrative review for 1991 found that certain pre- and post-shipment loans were countervailable, as they had been in previous years. One of the companies, Super Castings (India) Private Ltd., provided only aggregate pre- and post-shipment loan information in response to Commerce's inquiries. *Prelim. Determination* at 4,597. At the time, the countervailing duty statute stated that Commerce "shall, whenever a party or any other person refuses or is unable to produce information requested ... use the

best information otherwise available." 19 U.S.C. § 1677e(c) (1988). Since Commerce was unable to determine which loans fell into which category, it "assumed as best information available (BIA) that all reported loans were [the more preferential] pre-shipment loans." *Prelim. Determination* at 4,597; *see also* (Pls.' Reply at 21 (preshipment loans were the "most preferential available").) As a result, Commerce set the net subsidy rate for Super Castings at 41.75%, more than twice as high as the next highest individual rate. *Final Determination* at 44,843. Commerce then included Super Castings' high rate in its calculation of the country-wide countervailing duty, even though the rate was based on BIA. *Id.* at 44,843–44.

Plaintiffs contend that Commerce should have excluded the BIA rate applied to Super Castings from its calculation of the 1991 country-wide rate. They argue that its inclusion penalized cooperative companies by assigning a punitive BIA component to the general countervailing duty rate, even though all but one company fully cooperated with Commerce. (Pls.' Mem. of Points & Authorities in Support of Pls.' R. 56.2 Mot. for J. on Agency R. at 9–10.) They do not claim that Commerce's treatment of Super Castings was unfair, only that Commerce should not extend that adverse treatment to other companies through its calculation of the country-wide rate. (Pls.' Reply at 22–23.)

Plaintiffs' argument is unpersuasive. The Court of Appeals for the Federal Circuit has indicated that Commerce has broad discretion in applying the BIA rule. *Allied–Signal Aerospace Co. v. United States*, 28 F.3d 1188, 1191 (Fed.Cir.1994), *cert. denied*, 513 U.S. 1077, 115 S.Ct. 722, 130 L.Ed.2d 628 (1995); *Saha Thai Steel Pipe Co., Ltd. v. United States*, 17 CIT 727, 733, 828 F.Supp. 57, 62 (1993). Commerce's assumption that "all reported loans [to Super Castings] were pre-shipment loans," *Prelim. Determination* at 4,597, was well within its discretion to select the information used as BIA. While the assumption is adverse, an adverse BIA is not necessarily punitive. A punitive approach would reject alternatives beneficial to the uncooperative company in favor of disadvan-

tageous information that was "demonstrably less probative of current conditions." *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed.Cir.1990) (BIA in antidumping context). Plaintiffs presented no such alternatives here.

When a party submits deficient information, Commerce may assume that the most adverse alternative is the most accurate estimate of current rates. This interpretation of the best information statute reflects the notion "that if [a] party possessed probative information justifying a lower rate ... it would have offered that information to Commerce as a matter of its economic interest." *Saha Thai*, 17 CIT at 732, 828 F.Supp. 57 at 61; *Rhone Poulenc*, 899 F.2d at 1190. The methodology does not necessarily penalize, but reflects the probable current situation as accurately as possible, while also encouraging compliance. *Rhone Poulenc*, 899 F.2d at 1190–91; *see also id.* at 1190 (declining to decide whether Commerce may use a punitive BIA: "We need not and do not decide the difficult question of whether the agency may use the best information rule to 'penalize' a party which submits deficient questionnaire responses.").

Plaintiffs concede that the choice of BIA used was not unfair. (Oct. 17, 1996 Oral Argument, Tape 4; Pls.' Reply at 22–23 (applying the BIA rate to Super Castings was "appropriate").) Since the BIA rate was not unfair as applied to Super Castings, the court finds that its effect on the country-wide rate did not unfairly penalize cooperating companies. Although the rate used was an estimate, it did not necessarily result in a more unfavorable rate, either for Super Castings or for companies subject to the country-wide rate, than would have resulted had Super Castings provided current information. Plaintiffs did not refute Commerce's assumption that the rate chosen was the most accurate estimate of actual current conditions.

The fact that the BIA rate used was much higher than the rate found for any other company does not render its inclusion in the country-wide rate unfair. Under *Ipsco* and *Ceramica Regiomontana* Commerce was permitted to include the Super Castings BIA rate in its calculation of the country-wide

rate. *Ipsco Inc. v. United States,* 899 F.2d 1192 (Fed.Cir.1990); *Ceramica Regiomontana, S.A. v. United States,* 18 CIT 376, 853 F.Supp. 431 (1994), *rev'd on other grounds,* 64 F.3d 1579 (Fed.Cir.1995). Its decision to do so was reasonable and in accordance with law, and is therefore sustained.

### CONCLUSION

For the reasons stated above, Commerce's methodology for calculating the country-wide rate is sustained. Commerce's calculation of the § 80HHC subsidy is remanded for recalculation in a manner consistent with this opinion and with *Crescent Foundry.* Remand results are due within thirty days of the date this opinion is entered. Any party contesting the results shall file comments or responses within thirty days of the remand results, after which Commerce will have fifteen days in which to file a reply.

### ORDER

Upon consideration of all papers and proceedings in this case submitted for decision, and after due deliberation, it is hereby

ORDERED that Commerce's methodology for calculating the country-wide rate in this case is sustained, and it is further

ORDERED that the case is remanded for Commerce to recalculate the subsidy conferred by § 80HHC, and it is further

ORDERED that remand results are due within thirty days of the date this opinion is entered, and it is further

ORDERED that any party contesting the results shall file comments or responses within thirty days of the remand results, after which Commerce will have fifteen days in which to file a reply.

SO ORDERED.