Slip Op. 00 - 20

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - - x
KAJARIA IRON CASTINGS PVT. LTD. <u>et</u> <u>al</u>.,      :

                     Plaintiffs,      :

                v.      :      Court No. 95-09-01240

                            :

UNITED STATES,      :

                   Defendant.      :
- - - - - - - - - - - - - - - - - - - - - x

<u>Memorandum & Order</u>

[Upon plaintiffs' motion, case remanded again
 to the International Trade Administration.]

Dated: February 18, 2000

    Cameron & Hornbostel LLP (<u>Dennis James, Jr</u>.) for the plain-
tiffs.


    AQUILINO, Judge:  The background of this case, which arises out of <u>Certain Iron-Metal Castings From India: Final Results of Countervailing Duty Administrative Review</u>, 60 Fed.Reg. 44,843 (Aug. 29, 1995), is set forth <u>sub</u> <u>nom</u>. <u>Kajaria Iron Castings Pvt. Ltd. v. United States</u>, 21 CIT ___, 956 F. Supp. 1023, <u>remand</u> <u>results</u> <u>aff'd</u>, 21 CIT ___, 969 F.Supp. 90 (1997), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u>, 156 F.3d 1163 (Fed.Cir. 1998), familiarity with which is presumed.  In conformity with the mandate of the court of appeals, Senior Judge DiCarlo remanded[1] the

---

   [1] His order per <u>Kajaria Iron Castings Pvt. Ltd. v. United States</u>, 22 CIT ___, Slip Op. 99-6 (Jan. 14, 1999), granted leave to return to court to contest the results thereof.  The ITA's <u>Corrected Final Results of Redetermination on Remand</u> have been duly docketed herein, and the plaintiffs have filed comments on them, along with a motion for oral argument.  The latter is hereby denied, given the quality of their written submission and the lack of any response by other parties.

case again to the International Trade Administration, U.S. De-
partment of Commerce ("ITA") on the grounds that its

> methodology double counted the subsidies the [plain-
> tiffs] received from the CCS over-rebates, by counter-
> vailing both the over-rebates and the section 80HHC
> deduction attributable to those over-rebates

and that its

> decision to countervail the portion of the section 80-
> HHC deduction attributable to the IPRS rebates on non-
> subject castings [was] beyond its statutory authority.

156 F.3d at 1180.

During the period under administrative review, the in-
come-tax deduction, an International Price Reimbursement Scheme
("IPRS"), and a Cash Compensatory Support ("CCS") program were in
effect in India. According to the record at bar, section 80HHC
of the tax law[2] of that land permitted deduction from taxable in-
come of profits derived from exports of merchandise. Simply stated,
IPRS reimbursed Indian producers for difference in price between
domestic pig iron and that available for less on the world market.
CCS rebated indirect taxes and import duties and charges borne by
inputs physically incorporated into export product. A producer
received the latter upon export, calculated as a percentage of the
invoice price of the goods. To the extent the ITA came to con-
clude that such rebates exceeded the total amount of such charges
upon those inputs, it treated the excess (the "over-rebate") as
a countervailable subsidy. Because income from exports included

---

[2] See Corrected Final Results, Appendix 1.

IPRS grants and CCS rebates, those benefits had an impact on the deductions pursuant to §80HHC.

In calculating net subsidy to the Indian exporters, the ITA treated the portion of the §80HHC deduction attributable to IPRS rebates as an untied, countervailable subsidy. Rejecting this approach, the Federal Circuit explained that the agency

> erred in countervailing th[at] portion of the . . .
> deduction . . . because the rebates involved were
> tied[3] to merchandise not within the scope of the
> review.  . . .  On remand, Commerce should eliminate
> the IPRS rebates in calculating the subsidy received
> on subject castings through the section 80HHC deduc-
> tion.

Id. at 1176.  The court of appeals also disagreed with the agency's position that countervailing CCS over-rebates and their non-taxation separately does not result in double-counting, concluding that

> Commerce's policy of discounting secondary tax conse-
> quences cannot mean that if a producer receives a sub-
> sidy that is taxed Commerce will countervail the pre-
> tax subsidy, but that if a producer receives a subsidy
> that is not taxed Commerce will countervail the subsidy
> and the tax that should have been paid if the subsidy
> were taxed.  The circumstances in this case are akin to
> the latter situation, in that the Producers in effect
> received the CCS over-rebates tax-free because of the
> section 80HHC deduction.  It was improper for Commerce
> to countervail both the CCS over-rebates and the tax
> that would have been paid on th[em] but for the section
> 80HHC deduction.  The reason is that, in so doing, Com-
> merce imposed a countervailing duty that was not "equal
> to the amount of the net subsidy" in contravention of
> 19 U.S.C. § 1671(a).  . . .

---

[3] According to the record herein, when a countervailable benefit is tied to the production or sale of a particular product, the ITA will allocate the benefit solely to that product. 60 Fed.Reg. at 44,845.

On remand, Commerce should recalculate the subsidy provided by the section 80HHC deduction in a manner that eliminates the double-counting of the CCS over-rebates. . . .

Id. at 1175.

I

In attempted compliance with the Circuit mandate, the

ITA remand results now at bar state with regard to IPRS that the

companies' section 80HHC tax deduction claims are based on their profit on export income. Therefore, for each company, we adjusted the benefit (numerator) by subtracting the amount of tax actually paid from the amount of tax the company would have been liable to pay absent an estimated amount of section 80HHC deduction attributable to profit earned on exports of non-subject merchandise. We factored [such] profit . . . out of the . . . deduction because IPRS rebates for non-subject merchandise can only influence, and be reflected in, the component of profit earned on non-subject merchandise.

To estimate the amount of the section 80HHC tax deduction attributable to profits earned on exports of non-subject merchandise, we took the ratio of the value of non-subject exports to the value of total exports and applied it to the total amount of the section 80HHC deduction claimed. We considered this result to be the only possible estimate of the amount of section 80HHC tax deduction that is attributable to exports of non-subject merchandise. We subtracted this amount from the total amount of the section 80HHC deduction actually claimed. Because this result is the portion of the section 80HHC deduction that is attributable only to exports of the subject castings, it is not influenced by IPRS rebates.

Corrected Final Results, pp. 3-4 (footnote omitted). Further:

. . . Because CCS rebates (including the CCS over-rebates) are treated as income, it follows that CCS rebate income contributes to a Producer's profit as all of its income does. In the administrative re-view, we determined that the CCS over-rebates were provided to the Producers at ad valorem rates which

varied on a company-by-company basis.  Therefore,
we assumed that the contribution of the CCS over-
rebate income to a company's profit is commensurate
with its individual ad valorem rate of CCS over-
rebate and reduced each company's actual section
80HHC claim accordingly.  These two adjustments re-
sulted in a recalculated section 80HHC deduction
for each company.

Id. at 4-5.  Finally, the ITA explains its approach to that §

80HHC deduction as follows:

> We derived the benefit (numerator) for each com-
> pany by calculating the tax savings on its recalculated
> amount of 80HHC deduction.  By factoring out the amount
> of the 80HHC tax deduction attributable to exports of
> non-subject merchandise . . . , we eliminated any in-
> fluence that IPRS rebates tied to non-subject merchan-
> dise have on the calculation of the benefit . . .. By
> prorating the section 80HHC deduction in this manner,
> we derived a new "tied" amount of section 80HHC deduc-
> tion that is attributable to subject merchandise only.
> By further reducing this "tied" amount by the rate at
> which the CCS over-rebates were received, we eliminated
> from the calculation the profit generated by those CCS
> over-rebates.
>
> Since the benefit (numerator) is now "tied" to
> subject merchandise, we followed our standard princi-
> ples for the attribution of "tied" benefits and fac-
> tored exports of non-subject merchandise out of the
> denominator as well.  Therefore, we used the value of
> exports of subject castings as the denominator rather
> than the value of sales of all exports.  This was done
> to ensure that both the numerator and the denominator
> reflect values attributable only to subject castings.
> The calculations remain "apples-to-apples" comparisons
> . . ..

Id. at 5.

## II

The results of this analysis, which are listed at pages

7-8 of defendant's Corrected Final Results, must be upheld unless

they are "unsupported by substantial evidence on the record, or

otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B).

Substantial evidence means "such relevant evidence as a reason-able mind might accept as adequate to support a conclusion." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir. 1984), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938), and Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).  The standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by sub-stantial evidence."  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

A

With regard to IPRS, the ITA considers its method of factoring profit on non-subject merchandise out of the benefit calculation to be the "only possible estimate"[4] thereof, which, in actuality, fails to eliminate that program's influence. That is, as the plaintiffs show, that method

> does not even address the IPRS since it uses ratios based on "values" of "exports" . . . when IPRS reve-nues are not even included in export sales values. The IPRS is grant income received in addition to re-venue earned on export sales.  Therefore, the only way to eliminate the "influence" of the IPRS on the subsidy calculations is to actually deduct the IPRS rebates from income and then calculate the total tax savings based on all exports, i.e., both subject and non-subject castings in the denominator.[5]

---

[4] Corrected Final Results, p. 4.

[5] Plaintiffs' Comments on the Commerce Department's Final Results of Redetermination on Remand, pp. 4-5 (emphasis in ori-ginal).  The plaintiffs also note that, if

(footnote continued)

Moreover, the plaintiffs assert that, by using only export values

to develop the ratios,

> all Commerce . . . is doing is allocating (improperly)
> the IPRS included in each company's taxable income to
> both non-subject and subject castings . . . according
> to export values.  . . .
>
>     To take an example, if a company sells 200,000
> rupees of subject castings and 100,000 rupees of non-
> subject castings, and receives 30,000 rupees in IPRS
> for the non-subject castings, all Commerce's ratio
> approach does is allocate two-thirds of the 30,000
> rupees received as IPRS to subject castings and one-
> third to non-subject.  That is, the approach allocates
> the 30,000 rupees IPRS in the following manner:
>
> 20,000 to subject castings (200,000 subject castings
> + 100,000 non-subject castings = 300,000 total exports;
> 200,000/300,000 = 2/3; 2/3 x 30,000 IPRS = 20,000); and
> 10,000 to non-subject castings (100,000/300,000 = 1/3;
> 1/3 x 30,000 = 10,000).
>
> Hence, the "influence" of the IPRS is still being in-
> cluded in the subject castings since the IPRS allocat-
> ed to subject castings should be zero, not 20,000.
>
> . . . [A]ll that needs to be done to eliminate the IPRS
> "influence" from the calculation is to subtract the
> IPRS from the income used to calculate the 80HHC bene-
> fit.  Unless all IPRS is deducted from income or profit
> first, the IPRS cannot be eliminated from the calcula-
> tion as required by the CAFC.[6]

        This court is constrained to concur.  In attempting to

estimate the portion of the §80HHC deduction that is attributable

------------

> Commerce prefers a denominator based on subject cast-
> ings only, the IPRS must still be deducted from income
> first.  Commerce can then calculate the remaining pro-
> fit and 80HHC deduction attributable solely to subject
> castings (the numerator) by using a ratio of the value
> of subject castings sales to total sales.  The denomi-
> nator may then include subject castings only.

Id. at 5, n. 3.

   [6] Id. at 5-6 (emphasis in original).

to non-subject exports, the ITA has seemingly lost sight of the guidance of the Federal Circuit. No matter what ratio is used, because export profits (and the resultant §80HHC deduction) reflect both IPRS grants and sales revenue, some IPRS income will still be attributed to subject exports and, hence, countervailed under the agency's methodology. The court of appeals did not require the ITA to estimate profit on non-subject merchandise, only to eliminate IPRS, which it has failed to do.

This court also concurs that the agency, in attempting to estimate the portion of the §80HHC deduction attributable to non-subject exports, has made "what should be a very simple adjustment into a complicated -- and erroneous -- calculation that thwarts the CAFC's instructions."[7] Even the ITA recognizes that IPRS grants are "clearly treated" as income in financial statements on the record, pointing out, for example, that IPRS receipts are reported as "Reimbursement against Pig Iron" in plaintiff RSI, Ltd.'s financial records. See Corrected Final Results, pp. 12-13. Indeed, the court of appeals noted that no complicated subsidy tracing would be required in cases such as this, where the foreign respondents have provided

> documentation that allows Commerce to separate the portion of the tax deduction based on rebates related to non-subject merchandise from the remainder of [the] countervailable tax deduction. . .. Since the Producers provided such data, Commerce should eliminate [] IPRS . . . from the calculation of the subsidy provided by the section 80HHC deduction.

156 F.3d at 1176.

---

[7] Id. at 6.

The ITA's attempt to estimate profit on non-subject merchandise must therefore be set aside.  This court cannot accept its position that the methodology proposed by the plaintiffs "makes no sense at all" because IPRS is income rather than profit, and simply subtracting the IPRS amount from the §80HHC deduction would result in a negative number several times the value of the deduction. See Corrected Final Results, p. 13.  The plaintiffs concede that a negative number would result in some instances, but deny that this proves any error:

> . . . [A]ll this means is that but for the IPRS, the company would have had a loss.  In such an instance, the 80HHC subsidy would become zero because all of the otherwise countervailable deduction would be "tied" to the IPRS earned on non-subject castings.[8]

The Federal Circuit similarly noted that IPRS increased export profits by "no more than" the amount of the grants, implicitly accepting plaintiffs' explanation that they may also have tended to offset losses in certain instances.  See 156 F.3d at 1176.

B

With regard to the CCS over-rebates, the ITA assumed that their contribution to a company's profit was commensurate with its individual *ad valorem* rate therefor and thus reduced the §80HHC claim by that rate.  The plaintiffs argue that such reasoning is "flawed" and "does not come close to eliminating

---

[8] Id. at 16, n. 10 (emphasis in original).

all the double-counting", as required by the court of appeals,

because the

> countervailable subsidy found from the over-rebate
> is not a percentage of profit; it is a percentage
> of total exports.  Accordingly, the contribution of
> the CCS over-rebate to profit can only be determined
> by multiplying the company's over-rebate rate times
> total export sales.  Eliminating only a percentage
> of profit does not eliminate all of the CCS that has
> been separately countervailed.[9]

The CCS program rebated indirect taxes and import du-

ties and charges borne by inputs physically incorporated into an

exported product,

> paid upon export and [] calculated as a percentage
> of the f.o.b. invoice price.  . . .  [T]he rebate
> rate for exports of castings was set at a maximum
> of five percent for the review period.

Certain Iron-Metal Castings from India: Preliminary Results of

Countervailing Duty Administrative Review, 60 Fed.Reg. 4,596,

4,598 (Jan. 24, 1995).  Hence, the ITA found in prior proceedings

that the CCS program *per se* did not provide a countervailable

benefit, but noted that it had to

> determine on a case-by-case basis whether there is
> an over-rebate, i.e., "whether the rebate for the
> subject merchandise exceeds the total amount of in-
> direct taxes and import duties borne by inputs that
> are physically incorporated into the exported pro-
> duct."  . . . If an over-rebate exists, the differ-
> ence between the allowable rebate and the actual
> rebate is a countervailable subsidy.

156 F.3d at 1167-68, quoting 60 Fed.Reg. at 4,598.

---

[9] Id. at 19-20.

The over-rebate rate calculated by the agency is therefore, by definition, also a "percentage of f.o.b. invoice price", calculated upon export.  Hence, the record supports plaintiffs' premise that the subsidy found from over-rebate is a percentage of total exports rather than a percentage of profit.  Counsel use the ITA's calculation for plaintiff RSI, Ltd., which had a rate of 0.83%, to illustrate the error in methodology, explaining that, after adjusting its calculations to account for IPRS, the agency found a percentage of profit:

> . . . However, RSI received CCS as a percentage of total exports, not as a percentage of profit.  Appendix 3, page 2, of Commerce's Remand Results shows that RSI received "cash assistance," which is the CCS, of . . . rupees.  Some of this . . . was countervailed; all of it contributed to profit; and all of it was deducted pursuant to 80 HHC.  Hence, in order to eliminate the double counting under 80 HHC, all of the countervailed CCS must be deducted from profit <u>first</u>, before calculating the 80 HHC subsidy.[10]

The plaintiffs further explain the error in terms of percentages:

> The total CCS at the time was 5% of export sales; however, only 0.83% was countervailed.  This means that 16.6% of the CCS received was countervailed (0.83/5.00 = 16.6%).  Thus, 16.6% of the CCS actually received must be eliminated from profits in order to eliminate the double counting.  When Commerce reduced RSI's actual 80 HHC claim by an additional 0.83%, Commerce did not eliminate 16.6% of the CCS, it eliminated at most only 0.83% of it.[11]

---

[10] <u>Id</u>. at 20 (emphasis in original).

[11] <u>Id</u>. at 21.

The court concurs that the record shows that the ITA has failed to eliminate CCS over-rebates from the benefit calculation under §80HHC.  They were a percentage of a firm's total exports, so merely reducing profit (and hence the §80HHC deduction) by their over-rebate rate(s) fails to eliminate all of the CCS that was countervailed separately.[12]

### III

In view of the foregoing, this case must again be remanded to the ITA for recalculation of the net subsidies to the plaintiffs under §80HHC, using a methodology that complies with the mandate of the court of appeals, eliminating both IPRS grants and the double-counting of CCS over-rebates in a manner not inconsistent with that court's opinion.

The defendant may have 90 days to complete said recalculation and to report the results thereof to this court, where-

---

[12] The agency takes the position, as it did with regard to IPRS, that plaintiffs' suggested approach is erroneous because CCS over-rebates are income rather than profit, and reducing the deduction by such income would result in a negative number. See Corrected Remand Results, p. 16.  The plaintiffs respond that there is no reason why the §80HHC deduction should equal CCS, since it increases profits "or offsets losses" in the exact amount of the cash received.  Plaintiffs' Comments on the Commerce Department's Final Results of Redetermination on Remand, p. 24.  The Federal Circuit supports this reasoning, stating that inclusion of the CCS rebates in export income raises export profits by an amount "no greater than" the amount of the rebates.  156 F.3d at 1174.

upon the parties may file written comment(s) thereon within 30 days, with any reply thereto submitted within 15 days thereafter.

So ordered.

Dated: New York, New York
       February 18, 2000


_____
                                    Judge