Slip Op. 00 - 147

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - x
KAJARIA IRON CASTINGS PVT. LTD. <u>et al</u>.,  
                             :

                  Plaintiffs,

                             :

         v.

                             :

UNITED STATES,                     : Court No. 95-09-01240

                   Defendant,   :

        -and-

                             :

ALHAMBRA FOUNDRY INC. <u>et al</u>.,

                             :

            Intervenor-Defendants.

                             :
- - - - - - - - - - - - - - - - - - - - x

<u>Memorandum & Order</u>

[Upon plaintiffs' renewed motion,
 peremptory remand to the Inter-
 national Trade Administration.]


                             Dated: November 9, 2000

      <u>Cameron & Hornbostel LLP</u> (<u>Dennis James, Jr</u>.) for the plain-
tiffs.

      <u>David W. Ogden</u>, Assistant Attorney General; <u>David M. Cohen</u>,
Director, and <u>Velta A. Melnbrencis</u>, Assistant Director, Commer-
cial Litigation Branch, Civil Division, U.S. Department of Jus-
tice; and Office of Chief Counsel for Import Administration, U.S.
Department of Commerce (<u>Robert E. Nielsen</u>), of counsel, for the
defendant.

      <u>Collier Shannon Scott, PLLC</u> (<u>Paul C. Rosenthal</u> and <u>Robin H.
Gilbert</u>) for the intervenor-defendants.


        AQUILINO, Judge: The court is in receipt of a sub-

mission by the International Trade Administration, U.S. Depart-

ment of Commerce ("ITA"), encaptioned <u>Final Results of Redeter-

mination on Remand</u> and stated to be pursuant to the slip opinion

00-20, 24 CIT ___ (Feb. 18, 2000), filed herein, familiarity

with which is presumed. This submission, which will be referred

to hereinafter as the "May 2000 Remand Results", is summarized

by the agency (at pages 1 and 20), in part, as follows:

> . . . Pursuant to the Court's remand instructions, the Department has recalculated the program rates for the subsidies conferred under section 80HHC of India's Income Tax Act (80HHC) and the company-specific total ad valorem rates.  We have recalculated the rates, in conformity with the CAFC's September 8, 1998 opinion in Kajaria, using a methodology which ensures 1) that there is no "double-counting" of the subsidies that were provided in the form of Cash Compensatory Support (CCS) over-rebates and 2) that there is no countervailing of International Price Reimbursement Scheme (IPRS) rebates provided with respect to non-subject castings.  Finally, we have recalculated the all-others rate and determined the company-specific total ad valorem rates pursuant to the CAFC's . . . opinion.

> *    *    *

> The Department has recalculated the subsidy rates of the 80HHC program pursuant to the instructions of the CIT and in conformance with the opinion of the CAFC.

The plaintiffs deny this representation in lengthy

written comments which culminate in a request that this court

> (1) find that the Remand Results do not eliminate either the IPRS or the double-counting of the CCS over-rebates from the Section 80HHC subsidy, and, (2) . . . remand this matter with instructions that Commerce re-do the calculations to correctly implement the CAFC's and this Court's prior instructions.[1]

---

[1] Plaintiffs' comments are accompanied by a motion for oral argument, which need not be granted, given the excellence of the written submissions on the issues by all parties; ergo, that motion is hereby denied.

(footnote continued)

Upon further reflection and consideration of the parties' continuing, contrary positions, this court is constrained to accept that of the plaintiffs and thus to order, yet again, a remand to the ITA.

The saga of this current circumstance of unfinished administrative, and thus judicial, process can be read in Certain Iron-Metal Castings From India: Final Results of Countervailing Duty Administrative Review, 60 Fed.Reg. 44,843 (Aug. 29, 1995), aff'd in part, remanded in part sub nom. Kajaria Iron Castings Pvt. Ltd. v. United States, 21 CIT 99, 956 F.Supp. 1023, remand results aff'd, 21 CIT 700, 969 F.Supp. 90 (1997), aff'd in part, rev'd in part and remanded, 156 F.3d 1163 (Fed.Cir. 1998), remanded, 23 CIT ___, Slip Op. 99-6 (Jan. 14, 1999), second remand results remanded, 24 CIT ___, Slip Op. 00-20 (Feb. 18, 2000). Indeed, this process has outlived the judge originally assigned. The undersigned continues simply as the minister of the mandate of the court of appeals, to wit:

> On remand, Commerce should recalculate the subsidy provided by the section 80HHC deduction in a manner that eliminates the double-counting of the CCS over-rebates. . . . Commerce must avoid double-counting subsidies, i.e., countervailing both the full amount of a subsidy and the nontaxation of that subsidy, when the party under investigation provides documentation that allows Commerce to separate the tax deduction based on the fully countervailed subsidy from the otherwise countervailable portion of the tax deduction.

---

One of the submissions, namely, Defendant's Reply to Plaintiffs' Comments on Results of Redetermination on Remand, has engendered a motion for leave to respond to it, which motion of the plaintiffs is hereby granted.

156 F.3d at 1175.  Similarly with regard to IPRS, that court held

that

> Commerce erred in countervailing the portion of the
> section 80HHC deduction based on the IPRS rebates
> because the rebates involved were tied to merchandise
> not within the scope of the review.  . . .  On remand,
> Commerce should eliminate the IPRS rebates in calculat-
> ing the subsidy received on subject castings through
> the section 80HHC deduction.  . . . [W]hen the party
> under investigation provides documentation that allows
> Commerce to separate the portion of the tax deduction
> based on rebates related to non-subject merchandise
> from the remainder of a countervailable tax deduction,
> Commerce should not countervail the portion of the
> tax deduction subsidy tied to non-subject merchandise.
> Since the Producers provided such data, Commerce should
> eliminate the IPRS rebates from the calculation of the
> subsidy provided by the section 80HHC deduction.

Id. at 1176.

When the undersigned first considered these issues,

the plaintiffs argued that the ITA is making "what should be a

very simple adjustment into a complicated -- and erroneous --

calculation that thwarts the CAFC's instructions".  Slip Op.

00-20, p. 8.  They reiterate this argument now and state that

> all that needs to be done to eliminate the IPRS
> "influence" from the calculation is to subtract
> the IPRS from the taxable income used to calculate
> the 80HHC benefit.

Plaintiffs' Comments, pp. 20-21.  With regard to the CCS over-

rebates, the plaintiffs maintained that,

> in order to eliminate the double counting under
> 80 HHC, all of the countervailed CCS must be de-
> ducted from profit first, before calculating the
> 80 HHC subsidy.

Slip Op. 00-20, p. 11, quoting Plaintiffs' Comments on the Commerce Department's Final Results of Redetermination on Remand, p. 20 (May 4, 1999) (emphasis in original).

This court has already accepted this analysis and reported that it "cannot accept [defendant's] position that the methodology proposed by the plaintiffs 'makes no sense at all'". Id. at 9.  See id. at 12.

The May 2000 Final Results state (at pages 6-7) that,

in order to eliminate the IPRS rebates from the calculation of the 80HHC subsidy, the Department necessarily must estimate the effect of the IPRS rebates on the profit.  The Department must do so because profit is the basis for the calculation of the 80HHC subsidy.

. . . Because the CIT has rejected the calculations in the Corrected Final Results of Redetermination, we have recalculated the 80HHC subsidy by removing the IPRS and CCS rebates from the income which ultimately is the basis upon which the 80HHC tax deduction was derived.

Under this methodology, we have weighted all sources of income equally.  We have not attempted to "trace" income or expenditures to specific sources, nor do we have information available to be able to attribute income, expenditures, or profit to specific sources. We have assumed that each rupee of income, regardless of the source of that income, played the same role in the determination of a company's profit, and thus played the same role in the calculation of the company's tax deduction under 80HHC.  For example, we have assumed that both one rupee in duty drawback received by a company and one rupee in sales revenue received by the company had the identical effect on the determination of the company's profit. Thus, if a company's IPRS and CCS rebates equaled 20 percent of the company's income, then we assumed that 20 percent of the company's profit was derived from IPRS and CCS rebates.  Therefore, 20 percent of the subsidy calculated for the 80HHC program in the original final results of administrative review should be "tied" to the

IPRS and CCS programs. Thus, the recalculated 80HHC
subsidy would be reduced by 20 percent.

Again, this court cannot concur. The ITA has not eliminated the
influence of the rebates on the calculation of any §80HHC sub-
sidy. It must recalculate any such subsidy by subtracting the
IPRS rebates and CCS over-rebates from taxable income before
determining any §80HHC benefit. Cf. Plaintiffs' Response to
Defendant's Reply to Plaintiffs' Comments, p. 3:

> What is of significance for this case . . .
> is the fact that the expenses being repaid by way
> of the CCS and IPRS have already been incurred by
> the producer long before the payments are received.
> And these expenses are incurred in producing the
> castings whether or not the CCS and IPRS are re-
> ceived. Accordingly, the CCS and IPRS *do* increase
> profits to the full extent of payment. It is for
> this reason that the payments are treated improp-
> erly in the remand methodology since that method-
> ology assumes that additional costs must be incurr-
> ed that somehow reduce the IPRS' and CCS' effect
> on a company's taxable income.

Emphasis in original.

The defendant may have 30 days to carry out this per-
emptory remand and to report the results thereof to the court.

So ordered.

Dated: New York, New York
       November 9, 2000

_____
                              Judge